***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
PATRICIA E. MCFADDEN,              :
                                    :
            Plaintiff,              :
                                    :   Civ. Action No. 13-5756 (FLW)
v.                                  :
                                    :
UNITED STATES OF AMERICA and,      :   OPINION
BASKING RIDGE GLASS & MIRROR,      :
                                    :
            Defendant.              :
_____:

**WOLFSON, District Judge**:

      Plaintiff Patricia McFadden ("Plaintiff") filed this negligence suit against the Basking Ridge Post Office ("the Post Office") and Basking Ridge Glass and Mirror ("BRG") (collectively "Defendants") for negligently maintaining the outside premises of a post office where she fell. Now, Defendants separately move for summary judgment on Plaintiff's claim. In their motions, the Post Office argues that Plaintiff has failed to establish causation and that Plaintiff was not an invitee at the time of her fall, while BRG contends that Plaintiff's claim is time barred under N.J.S.A. 2A: 12-2, because this suit was not filed within two years after Plaintiff's accident. Additionally, the Post Office asserts cross-claims against BRG for indemnification and contribution; BRG also moves for summary judgment on those claims. For the reasons set forth below, the Post Office's motion for summary judgment is **DENIED** and BRG's motion is **GRANTED** in its entirety.

**Factual and Procedural Overview**

      Patricia McFadden is a 79-year-old woman who sustained a neck and shoulder injury as a result of an alleged slip and fall on ice while on the premises of the Basking Ridge Post Office

1

on February 5, 2011. United States' Statement of Material Facts ¶ 1, 7. ("Def's Statement of Facts"). The Post Office's premises includes two parking lots: a customer lot that reserves a space for handicapped persons located in front of the building, and an employee lot located to the right side of the building. Def's Statement of Facts ¶ 35; Counter Statement of Material Facts By Patricia McFadden ¶¶ 6-7 ("Pl's Counter Statement of Facts"). An L-shaped sidewalk used by the Post Office's customers runs from the main entrance of the Post Office to the customer lot; the same sidewalk sits between the customer lot and the employee lot, such that both employees and customers use the same sidewalk to gain entrance to the building. Pl's Counter Statement of Facts ¶ 7.

The employee lot has an ungated access driveway from Brownlee Place, and, although a "DO NOT ENTER" sign is posted at the entrance, an "in-arrow" is also painted on the driveway's entrance pavement. Pl's Counter Statement of Facts ¶¶ 2-3. Moreover, within the employee lot are two signs that restrict its use, reading: "RESERVED FOR EMPLOYEES" and "UNAUTHORIZED VEHICLES WILL BE TOWED AT OWNER'S EXPENSE." Pl's Counter Statement of Facts ¶ 4. However, these signs are only visible once inside the parking lot, and not from its entrance or Brownlee Place. Pl's Counter Statement of Facts ¶ 4.

On the date of her accident, late afternoon on a Saturday, Plaintiff's husband, now deceased, drove Plaintiff to the Post Office. Pl's Counter Statement of Facts ¶ 8; Def's Statement of Facts ¶ 7. Despite having a valid handicapped placard for her vehicle, for reasons unknown, Plaintiff's husband entered the Post Office's premises through the entrance driveway of the employee lot. Def's Statement of Facts ¶ 35. Subsequently, Plaintiff exited the vehicle and walked on the sidewalk—shared by the customer lot—to the Post Office's main entrance, which remained open after the Post Office's retail hours had ended, in order for customers, like

Plaintiff, to access its lobby and mail letters. Pl's Counter Statement of Facts ¶ 9. Her husband waited in the car until Plaintiff finished her affairs, which took approximately six to eight minutes. Pl's Counter Statement of Facts ¶¶ 8, 10. Upon her return to the vehicle, Plaintiff once again walked on the same sidewalk towards the employee lot and, after taking "maybe one or two" steps from the curb into the employee lot, Plaintiff slipped and fell. Def's Statement of Facts ¶ 33; Deposition transcript of Patricia McFadden at P. 26:6 ("Pl's Deposition"). Although Plaintiff could not identify the exact source of her fall, during her deposition, she indicated that, after stepping onto the surface of the parking lot, "I went—my feet went right out from under me and I fell flat on my back." Pl's Deposition at 13:18-19. Upon further questioning, she stated: "…I slipped. I skid…I didn't feel anything other than just skidding…I had no stability at all." Pl's Deposition at 28:3, 13-14; 29:1-2. And, after falling to the ground, Plaintiff recalled feeling "pretty wet." Pl's Deposition at 28:21. Furthermore, Carol Ewing, an employee of the Post Office, described the weather conditions as having snowed earlier in the week, and snow was on the ground around the time of Plaintiff's accident. Deposition transcript of Carol Ewing at P. 28:20-29:11 ("Ewing's Deposition").

After her accident, Plaintiff submitted two separate Claims for Damage, Injury, or Death to the United States Postal Service describing her alleged slip and fall and the injuries she sustained. Def's Statement of Facts ¶¶ 4-7. Subsequently, on September 19, 2013, Plaintiff filed a complaint against the United States[1] for negligence under the Federal Tort Claims Act ("FTCA"). Def's Statement of Facts ¶ 10. Approximately seven months later, Plaintiff amended her complaint and alleged that the United States "negligently and carelessly [maintained] the [Basking Ridge Post Office] so as to cause a dangerous condition to exist thereon." Def's

---

[1] The United States has given its consent to be sued in certain negligence actions pursuant to the FTCA. *See* 28 U.S.C. 2674 (assigning liability for the United States).

3

Statement of Facts ¶ 11. On October 15, 2014, after learning that the Post Office used an independent contractor for snow and ice removal, Plaintiff filed a second amended complaint, wherein BRG was named as a defendant. Def's Statement of Facts ¶ 12; Plaintiff's Counter Statement of Facts Pursuant to Rule 4:46-2(b) ¶¶ 9, 11. Subsequently, in its answer to Plaintiff's second amended complaint, the Post Office asserted cross-claims for indemnification and contribution against BRG.

In the present matter, both Defendants move for summary judgment. The Post Office primarily argues that Plaintiff is unable to establish the cause-in-fact of her injuries, since she could not identify the condition that caused her to fall, and that Plaintiff exceeded the scope of her invitation by utilizing the Post Office's employee parking lot without authorization. Brief of the United States in Support of its Motion for Summary Judgment at 1. (Def's Brief for Summary Judgment). Moreover, BRG contends that Plaintiff's claim against it is time barred, and that the Post Office has no contractual basis for indemnification. Brief of Basking Ridge Glass in Support of its Motion for Summary Judgment at 1. Plaintiff opposes both motions and the Post Office opposes the motion of BRG.

**Legal Standard**

A court may grant a motion for summary judgment when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "the Court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party." *Roth v. Marina Assocs.*, 2009 U.S. Dist. LEXIS 70952, at *9 (D.N.J. Aug. 11, 2009). In other words, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)). The inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 259 (internal citations and quotations omitted).

Nevertheless, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." *United States v. Premises Known as 717 South Woodward Street, Allentown, Pa*., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

## Discussion

### A.    Plaintiff's Negligence Claim Against the Post Office

Plaintiff asserts her negligence claim against the Post Office under the FTCA, which provides individuals with a remedy for injuries that arise from "the negligent or wrongful act or omission of" federal employees. *See* 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, 2679. A plaintiff is entitled to recover only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b). In that regard, New Jersey law governs Plaintiff's negligence claim against the Post Office. *See, e.g*., *Starkey v. United States*, 2011 U.S. Dist. LEXIS 4801 (D.N.J. Jan. 18, 2011) (in analyzing the plaintiff's negligence claim against the United States, the court treated the Post Office as a regular business operation, and applied the traditional common law premise liability classifications in determining the extent of the Post Office's duty owed to the plaintiff).

A plaintiff, under New Jersey law, is required to establish the following to prove a negligence claim: (1) that the defendant owed that plaintiff a duty; (2) that the defendant breached that duty; and (3) that the defendant's breach of duty was the proximate cause of the plaintiff's harm. *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 288 (1984). In premise liability cases, like the one here, the extent of the duty owed is typically governed by the classification of the plaintiff. *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 433 (1993). Generally, these classifications include invitees, licensees, and trespassers. *Atakora v. McAuley*, 2010 N.J. Super. Unpub. LEXIS 2680, at *5 (App. Div. Oct. 1, 2010).

In this case, the parties' dispute centers on whether Plaintiff exceeded the scope of her invitation as an invitee. Invitees are invited onto an owner's premises, "often in a commercial or business related matter." *Roth v. Marina Assocs.*, 2009 U.S. Dist. LEXIS 70952, at *11 (internal citation omitted). Since invitees are typically invited onto the premises for the benefit of the owner, they are owed a duty of reasonable care. *Bauer v. Nesbitt*, 198 N.J. 601, 615 (2009). This includes the duty "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Id* (internal citations and quotations omitted).

Nonetheless, it "has been consistently held that an owner's liability for the condition of his premises is co-extensive with his invitation." *Tomsky v. Kaczka*, 17 N.J. Super. 211, 216 (App. Div. 1952); *see also Nolan v. Bridgeton & Millville Traction Co.*, 74 N.J.L. 559 (1907); *Ryerson v. Bathgate,* 67 N.J.L. 337 (1902). In other words, the "liability of an inviter is circumscribed by the invitation and does not extend to [those] injuries [which are] incurred on a part of the premises [that is] not within the limits of the invitation." *Monheit v. Rottenberg*, 295 N.J. Super. 320, 324 (App. Div. 1996) (internal citations and quotations removed). That

6

invitation, however, "includes those parts of the premises to which the invitee reasonably [might] be expected to go." *Starkey v. United States*, 2011 U.S. Dist. LEXIS 4801, *15 (internal citation and quotations omitted); *see also Williams v. Morristown Mem'l Hosp.*, 59 N.J. Super. 384, 390 (App. Div. 1960); *Monheit v. Rottenberg*, 295 N.J. Super. at 325; *Nary v. Parking Auth. of Dover*, 58 N.J. Super. 222, 229 (App. Div. 1959). Therefore, a determination of whether Plaintiff exceeded the scope of her invitation "depends on the surrounding circumstances." *Giangrasso v. Dean Floor Covering Co.*, 51 N.J. 80, 83 (1968) (citing *Williams v. Morristown Memorial Hosp.*, 59 N.J. Super. at 389-90.)

      i.    *Proximate Cause*

In support of its motion for summary judgment, the Post Office maintains that Plaintiff cannot establish the cause-in-fact of her injuries because "Plaintiff never saw any ice on the ground" prior to or after her alleged slip and fall. Def's Brief for Summary Judgment at 3, 11. However, this argument is unconvincing because Plaintiff may satisfy the element of causation without specifically identifying the alleged hazardous condition that allegedly caused her fall. This is so because, in "the absence of direct evidence," the plaintiff may prove "the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would exclude the idea that it was due to a cause with which the defendant was unconnected." *Callahan v. Nat'l Lead Co.*, 4 N.J. 150, 154-55 (1950). In other words, proof of certainty is not required since causation can be established with circumstantial evidence. *Irizarry v. Pathmark Stores, Inc.*, 2007 N.J. Super. Unpub. LEXIS 2779, at *9 (App. Div. Jan. 31, 2007) (holding that plaintiff satisfied the element of causation "even [though] plaintiff could not precisely pinpoint the specific cause of her slip," since "there were sufficient facts from

7

which it [could have been] reasonably inferred that the hazardous condition identified…was a proximate cause of plaintiff's injury").

A review of the record indicates that Plaintiff has raised a genuine issue of material fact on this motion with regard to causation, even if she cannot identify the hazardous condition, i.e. ice or snow, that caused her injury.[2] During her deposition, for example, Plaintiff identified the hazard that caused her fall:

> Q: Do you know why you fell?
> A: Obviously ice.

Tr. dated May 28, 2015, T27:1-2.  Furthermore, while Plaintiff admitted that "[i]t's possible" for her fall to be attributed to a different defect, and that she did not see the ice that allegedly caused her to slip, her description of the accident is consistent with a fall due to an icy surface:

> Q: Well, do you know for sure that you slipped on ice?
> A: I went right out from under me.
> Q: But do you know if that's because of ice or snow?
> A: Yes. I slipped. I skid.
> ….
> Q: Do you know if it was as a result of any foreign object that may have been dropped on the ground that you may have slipped on?
> A: No.
> Q: How do you know that?
> A: I didn't feel anything other than just skidding.
> ….
> Q: So as you sit here today, are you able to tell us under oath that it was ice as opposed to something else that made you skid or slide?
> A: Well, when I fell I was pretty wet, so obviously it was water.
> Q: So other than it being --
> A: And ice.

---

[2] In an attempt to prove causation, Plaintiff asserts that her husband saw the ice on which she slipped, and various medical records indicate that Plaintiff reported that the cause of the fall was ice. However, Mr. McFadden's statement is inadmissible hearsay as it is an out-of-court statement that is being offered for the truth of the matter asserted. Fed. Rule. Evid. 801(c). Similarly, Plaintiff's medical records are inadmissible because Plaintiff has not laid a proper foundation. *Williams v. W. Chester*, 891 F.2d 458, 471 (3d Cir. 1989) ("Only evidence admissible at trial may be used to test a summary judgment motion. Thus evidence whose foundation is deficient must be excluded from consideration."). Nevertheless, the Court finds that, on this motion, Plaintiff has met her evidentiary burden on causation, even without Mr. McFadden's statements and Plaintiff's medical records. *See infra.*

> Q: Well, how do you know it was ice?
> A: Because I slipped. I had no stability at all. I went right out from under me.

Tr. dated May 28, 2015, T27:1-2-T28:1-3; T28:8-14; T28:18-25-T29:1-2

Importantly, Plaintiff's deposition testimony is corroborated by Ms. Ewing, who had worked at the Post Office on February 4, 2011, the day before Plaintiff's fall. During her deposition, she confirmed the weather conditions around the time of Plaintiff's accident:

> Q: Do you have any independent recollection of the snow conditions or snow and ice conditions at or near the time of this accident back in February or on February 5th of 2011?
> A: I know it snowed --
> Q: Okay.
> A: -- because I know that there was snow on the ground. I don't know how much it snowed or how many times it snowed, but I know there was snow on the ground at the time.

Tr. dated July 14, 2015, T28:20-25-T29:1-4 Accordingly, when considering Plaintiff's testimony of her fall, in addition to Ms. Ewing's description of the weather, it may be reasonably inferred from the circumstantial evidence that the hazardous condition of ice identified by Plaintiff was the proximate cause of her injury; such an issue is reserved for the finder of fact at trial.

  *ii. Breach of Duty*

Generally, questions relating to the scope of a business owner's invitation are reserved for trial. *Monheit v. Rottenberg*, 295 N.J. Super. 320, 325 (App. Div. 1996) ("As a general proposition, questions pertaining to the scope of invitation and whether the entrant has exceeded that which is authorized are within the jury's domain."); *Williams v. Morristown Mem'l Hosp.*, 59 N.J. Super. at 390 ("Under the circumstances here, where the plaintiff admittedly was invited upon defendant's premises and it is alleged he exceeded his invitation, the question whether the invitation was extended to that part of the premises where the accident occurred is one for the

9

jury."); *Gudnestad v. Seaboard Coal Dock Co.*, 15 N.J. 210, 219 (1954) ("Whether or not the invitee stayed within the confines of the invitation is usually an issue for the jury.")

Here, Defendant argues that, even if causation is established, the Post Office did not breach the duty owed to Plaintiff, because she acted beyond the scope of her invitation by parking in the employee lot. Def's Brief for Summary Judgment at 14. In support of this contention, Defendant cites to *Sattelberg v. United States*, 2013 U.S. Dist. LEXIS 163559 (W.D. Wis. Nov. 18, 2013), a non-binding case applying Wisconsin state law. Although the court, there, found that the plaintiff trespassed by attempting to retrieve her car that was parked in the defendant hospital's employee parking lot, the facts of *Sattelberg* are distinguishable. For example, while driving through the defendant's premises, the plaintiff "failed to follow various signs directing her to the [hospital's] visitor and patient parking," and also ignored "signs…indicating that she was parking in 'Employee Parking Only.'" *Sattelberg*, 2013 U.S. Dist. LEXIS 163559, at *3, 6. Moreover, the entrance to the hospital's employee lot was gated, and its "yellow bollard gate box notified [the plaintiff] that she would be trespassing" by parking in the employee lot. *Id*. at *3. Accordingly, the parking lot's restrictive use was made clear since the lot was gated, with multiple signs throughout the hospital's premises, including the entrance of the parking lot, that notified drivers that the lot was reserved for employees only. Therefore, the surrounding circumstances in *Sattelberg* supported the court's finding that the plaintiff injured herself in an area where she could not have been expected to park.

In the instant case, however, Defendant could have reasonably anticipated Plaintiff's usage of the employee parking lot based on the surrounding circumstances, and, as such, a reasonable fact finder could find that Plaintiff had not exceeded the scope of her invitation.[3]

---

[3] The Post Office argues that, under a totality of the circumstances analysis, it owed Plaintiff a minimal duty of care because she visited the Post Office after it was closed. However, this argument is unavailing because the record

First, the employee parking lot is located next to the customer parking lot, and the two lots are separated by a sidewalk that leads to the main entrance of the building; both customers and employees use that sidewalk to access the Post Office. Second, the employee parking lot is not cordoned off by a fence or any other barriers to prevent customers from using it. Third, while there are "DO NOT ENTER" signs posted by the entrance and exit of the lot, the parking lot's entrance has an "in-arrow" painted on the pavement signaling drivers to proceed into the lot. And, those signs do not indicate that the lot was only reserved for employees. Finally, and more importantly, the signs indicating that the parking lot was reserved for employees were only visible from within the parking lot, not at the entrance or any other location along Brownlee Place. It is, therefore, fairly debatable whether customers could have seen these signs at all. Accordingly, in light of the surrounding circumstances, a trier of fact could reasonably find that the Post Office failed to adequately notify its customers about the employee lot's restrictive use; therefore, the issue of whether Plaintiff exceeded the scope of her invitation will ultimately have to be decided by the trier of fact.[4] *Williams v. Morristown Mem'l Hosp.*, 59 N.J. Super. at 391-92 (noting that plaintiff could have reasonably been expected to cross over a grass plot in reaching defendant hospital's main entrance because of the surrounding circumstances); *Nary v. Parking Auth. of Dover*, 58 N.J. Super. at 228 (holding that, in considering the surrounding circumstances, plaintiff passenger could have reasonably been expected to walk through parking lot owned by defendant parking authority).

---

reveals that the Post Office's lobby was accessible to the public during the time of Plaintiff's visit, even after the Post Office's retail hours had ended. Indeed, during her deposition, Plaintiff testified that, on the day of her accident, she entered through the Post Office's main entrance and mailed letters. Pl's Counter Statement of Facts ¶ 9.

[4] The Court notes further that there is no evidence, and therefore, unclear whether Plaintiff or her husband knew that the lot in which they parked was restricted to employees of the Post Office.

11

### B. Plaintiff's Negligence Claim Against Basking Ridge Glass

Plaintiff's negligence claim against BRG is governed by a two-year statute of limitations. N.J.S.A. 2A: 14-2. However, courts may "avoid [the] harsh results that otherwise would flow from [a] mechanical application of a statute of limitations" by lengthening the applicable statute of limitations period pursuant to the discovery rule. *Caravaggio v. D'Agostini*, 166 N.J. 237, 245 (2001) (quoting *Vispisiano v. Ashland Chemical Co.*, 107 N.J. 416, 426 (1987)). Typically, the discovery rule will be applied when "the victim either is unaware that he has been injured, or although aware of an injury, does not know that a third party is responsible." *Beauchamp v. Amedio*, 164 N.J. 111, 117 (2000); *see Ayers v. Jackson,* 106 N.J. 557, 582 (1987) (explaining that the discovery rule "tolls the statute until the victim discovers both the injury and the facts suggesting that a third party may be responsible") (internal citation omitted).

Although Plaintiff's Second Amended Complaint, naming BRG as a defendant, was filed on October 15, 2014, or more than 3 years after the Plaintiff's accident, Plaintiff contends that the Court should toll the statute of limitations because she was unaware of BRG's potential liability. However, the Court is not convinced by this argument. As explained by the Supreme Court of New Jersey, "knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires . . . the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." *Savage v. Old Bridge-Sayreville Med. Grp., P.A.*, 134 N.J. 241, (1993). Therefore, since plaintiff must be "reasonably unaware that a third party may also be responsible" for her injuries, "[p]laintiff must explain why [she] reasonably could not have discovered [her] cause of action in time to comply with the limitation period in order to justify the tolling of the statute of

12

limitations." *Betteridge v. Genuardi's Family Mkts., L.P.*, 2011 U.S. Dist. LEXIS 125486, at *10-11 (D.N.J. Oct. 31, 2011).

Here, Plaintiff did not provide an adequate basis for her untimely filing with respect to BRG; Plaintiff merely maintains that she relied on the Post Office to inform her about BRG's potential for liability. Rather, the record indicates that when Plaintiff fell, she was immediately aware as to the cause of her injury because, on several occasions, she attributed her fall to an icy surface. In fact, during her deposition, Plaintiff testified that the defect which caused her to fall was "obviously ice," and in describing her accident, she stated: "I went right out from under." Pl's Deposition at 27:2, 25. She continued: "…I slipped. I skid…I didn't feel anything other than just skidding…I had no stability." Pl's Deposition at 28:3, 13; 29:1, 2. Moreover, in her Claim for Damage, Injury, or Death, which Plaintiff submitted to the Post Office, Plaintiff stated that she "slipped and fell on ice." Def's Statement of Facts ¶ 4. Therefore, the record shows that Plaintiff had the requisite knowledge that would have alerted a reasonable person exercising ordinary diligence that a third-party entity, other than the Post Office, might be responsible for the removal of snow and ice on the premises. It is certainly not uncommon for commercial or other entities to rely on third parties for snow removal. Yet, Plaintiff made no inquiries on, or investigated into, that question.  In her original complaint, Plaintiff only alleged that the Post Office negligently maintained its premises without asserting any claims against a third party, and she relied on, or waited for, the Post Office to inform her about BRG's potential for liability. This does not meet the diligent inquiry standard.  Thus, Plaintiff's failure to investigate precludes the application of the discovery rule, and, therefore, Plaintiff's negligence claim against BRG is time barred. *Pilonero v. Twp. of Old Bridge*, 236 N.J. Super. 529, 537 (App. Div. 1989) (holding the discovery rule inapplicable because a police report indicated that the defendant driver, whom

plaintiff collided with, lost control of his vehicle due to an icy roadway, thereby giving plaintiff knowledge that pointed to the culpability of a party other than the driver he collided with).

### C. The Post Office's Cross-Claims for Indemnification

Lastly, the Post Office contends that it should be indemnified from BRG if the Post Office is found to be liable for Plaintiff's alleged slip and fall.[5] Plaintiff's Answer to Second Amended Complaint ¶ 1. However, the Court is unconvinced by this argument because there is no evidence of an indemnification agreement between the two parties.

New Jersey courts interpret indemnity agreements in accordance with the rules of contracts, and have typically demanded that they clearly set forth the intentions of the parties. *Englert v. The Home Depot*, 389 N.J. Super. 44, 51 (App. Div. 2006) (holding that, since the indemnification "clause [was] ambiguous, […] the clause should be strictly construed against the indemnitee."); *Huck v. Gabriel Realty*, 136 N.J. Super. 468, 475 (1975) (clarifying that, when determining the scope of an indemnification agreement, the court must apply "strict construction rules."); *Longi v. Raymond-Commerce Corp.*, 34 N.J. Super. 593, 603 (App. Div. 1955) (explaining that, in interpreting an indemnity agreement, "it is to be strictly construed and not extended to things other than those therein expressed."); *George M. Brewster & Son, Inc. v. Catalytic Constr. Co.*, 17 N.J. 20, 30 (1954) (indicating that, "contracts of indemnity, like all other contractual arrangements, are to receive a reasonable construction to serve and not subvert the general design of the stipulation").

---

[5] The Post Office also brought a claim for contribution against BRG. However, because BRG is being dismissed from the case pursuant to the statute of limitations, the Post Office will not be required to reimburse Plaintiff for any negligence attributable to BRG at trial. *Burt v. W. Jersey Health Sys.*, 339 N.J. Super. 296, 307 (App. Div. 2001) (holding that defendant hospital was only responsible for its own allocation of negligence where defendant anesthesiologists were dismissed from the case on technical grounds).

Here, the record reflects that there was no written contract for snow removal between the Post Office and BRG, let alone a written indemnification provision. However, despite the lack of a written contract, the Post Office maintains that there "is sufficient evidence for this Court to find that an enforceable oral contract did in fact exist between Basking Ridge Glass and the Post Office."[6] Brief of the Untied States in Opposition to BRG at 6. (Pl's Opposition Brief). According to Defendant, "it was automatic that Basking Ridge Glass would come to plow the Post Office parking lot when it snowed." Indeed, even if the Court finds that an oral contract for snow removal existed, Defendant did not address whether the parties can enter into a verbal indemnification agreement and, more importantly, it has failed to submit any evidence that an oral indemnification agreement with BRG existed. Rather, Defendant's limited evidence on this issue only demonstrates that the oral agreement—if any—between the Post Office and BRG was solely for snow and ice removal services. Therefore, since the record is devoid of a clear and unambiguous written or oral indemnification agreement, the Court has no basis to find that BRG was contractually required to indemnify the Post Office.

---

[6] The Post Office also maintains that BRG's motion should be denied because BRG's undisputed statement of facts is a mere recitation of the case's procedural history, and was included within its legal brief, thereby violating L. Civ. R. 56.1. Pl's Opposition Brief at 3. Nonetheless, BRG has responded to the Post Office's undisputed statement of facts, albeit it was included in BRG's briefing. In it, BRG includes numbered paragraphs that correspond with those in the Post Office's 56.1 statement, and BRG admits to each of the Post Office's allegations, adding supplemental explanations where necessary. Therefore, the Court finds BRG's submission to be adequate under L. Civ. R. 56.1. *See Schecter v. Schecter*, 2008 U.S. Dist. LEXIS 97518, at *18-20 (D.N.J. Nov. 26, 2008).

**Conclusion**

For the forgoing reasons, the Court will deny the Post Office's motion for summary judgment on Plaintiff's complaint, and grant BRG's motion for summary judgment against Plaintiff and the Post Office.

DATE:   February 11, 2015                                         /s/ Freda L. Wolfson
                                                                  Freda L. Wolfson
                                                                  U.S. District Judge